**HILL & RANGE SONGS, INC.**

v.

**FRED ROSE MUSIC, INC. and Broadcast Music, Inc.**

Civ. No. 6785.

United States District Court,
M. D. Tennessee,
Nashville Division.

Jan. 13, 1976.

John S. Clark, Abeles & Clark, New York City, William F. Carpenter and Richard D. Speight, Goodpasture, Carpenter, Woods & Sasser, Nashville, Tenn., for plaintiff.

L. Peter Parcher, New York City, Richard Frank, Jr., Nashville, Tenn., Robert B. Stewart, Montgomery, Ala., for defendants.

## MEMORANDUM

MORTON, District Judge.

As noted in the court's memorandum of October 22, 1975, there are five issues involved in this case. The first issue was submitted to a jury and tried on March 17, 18, and 19, 1975. On March 19, 1975, the jury returned a verdict which held that Mrs. Billie Jean Berlin was the putative wife of Hank Williams under Louisiana law at the time of his death on January 1, 1953, but was not his common-law wife under Alabama law at the time of his death. The remaining four issues were submitted to the court upon agreed facts and stipulated evidence.

On April 3, 1975, plaintiff filed a Motion for Judgment N.O.V. with regard to the portion of the jury's verdict which found that Mrs. Billie Jean Berlin was not the Alabama common-law wife of Hank Williams at the time of his death.

By letter of July 17, 1975, (see Appendix 1) the court notified counsel for the parties that it had decided all the issues involved in the matter in favor of plaintiff Hill & Range Songs, Inc. The court requested in this letter that Mr. Richard Speight, counsel for plaintiff, contact the court to assist in the preparation of the final memorandum.

On November 17, 1975, defendants filed two documents: (1) a Motion for a New Trial; and (2) a Motion to Reconsider, Alter and Amend Judgment. In these two mo-

tions, counsel for defendants avers that the court erred in several respects. The court has considered each of the grounds upon which counsel bases his assignments of error, and finds them to be without merit. Thus, the defendants' Motion for a New Trial and Motion to Reconsider, Alter and Amend Judgment must be denied.

However, the court deems it appropriate to comment further upon the seventh ground set forth in defendants' Motion to Reconsider, Alter and Amend Judgment. Defendants claim that:

> "[t]he Court erred in delegating the drafting of the Court's Opinion, and judgment pursuant thereto, to counsel for plaintiff while excluding counsel for defendants from access or information relating to any notes, memoranda, or other communications between the Court and counsel for plaintiff."

In the Brief in Support of Defendants' Motion to Reconsider, Alter and Amend Judgment, counsel for defendants states:

> "On July 17, 1975, the Court advised counsel that it had decided all issues in this cause in favor of plaintiff, Hill & Range Songs, Inc., and requested that counsel for plaintiff contact the Court for assistance in the preparation of the final Memorandum. That Memorandum was subsequently filed on October 22, 1975. Prior thereto, counsel for defendant was advised by counsel for plaintiff that instructions had been given to counsel for plaintiff not to discuss any matters relating to said Memorandum Opinion, including authorities upon which the Court's findings might be based.

> "Counsel for defendant is thus precluded from knowledge as to the basis of the Court's decision on July 17, 1975. It is respectfully submitted that such circumstances are prejudicial to the defendants. *See generally Herbert J. Roberts v. Norman M. Ross, Jr.,* 344 F.2d 747 (3rd Cir. 1965) and *In re Las Colinas, Inc.,* 426 F.2d 1005 (1st Cir. 1970)."

▇ The court fails to see how any prejudice to defendants has occurred by virtue of the method chosen by this court to draft its

final memorandum. The court had already articulated the issues in rough draft form, and decided them in favor of plaintiffs, prior to requesting the assistance of counsel for plaintiffs in preparing the final memorandum.

The general procedure followed by this court in nonjury cases is as follows. After the trial of the cause, counsel for each party is requested to submit proposed findings of fact and conclusions of law, as if that party had prevailed. Additional briefs may also be filed. Normally, the court takes the case under advisement following the filing of the proposed findings of fact and conclusions of law by counsel for the parties, and the court then prepares and files its memorandum opinion. This memorandum opinion may include all, some or none of the contents of either of the proposed findings of fact and conclusions of law. Rarely does this court adopt proposed findings of fact and conclusions of law without making alterations, based on the court's independent research and consideration.

Lest there be some misunderstanding, this court wishes to emphasize that it does not take credit for devising the above mentioned method of expediting the writing of memorandum opinions. As noted in the very case cited by counsel for defendants, *In re Las Colinas, Inc.,* 426 F.2d 1005, 1008 (1st Cir. 1970): "[t]he practice of inviting counsel to submit proposed findings of fact and conclusions of law is well established as a valuable aid to decision making." See also: *In re Woodmar Realty Company,* 307 F.2d 591, 593–594 (7th Cir. 1962); *Roberts v. Ross,* 344 F.2d 747, 752 (3rd Cir. 1965).

In some of the cases which are sufficiently complex to necessitate lengthy opinions requiring extensive typing and proofreading, this court may request the attorney for the prevailing party to assist in the preparation of the final memorandum opinion. This occurs when the case load is unusually heavy, and the court's staff is substantially behind in the current work. After deciding the issues in the case and preparing a rough draft opinion, the court notifies the parties in writing of its decision. In the notification letter, the attorney for the successful litigant is requested to contact the court to assist in drafting the final memorandum. A copy of the notification letter is normally placed in the official court file at the time the letter is mailed.

In the instant case, there was some deviation from the court's normal procedure. The court did not request that counsel for the parties file proposed findings of fact and conclusions of law. The reason for this was that the issues in the case had already been extensively briefed, and the court had been asked to decide the issues upon stipulated facts and evidence. This obviated the necessity for proposed findings of fact and conclusions of law. Also, the notification letter was not placed in the official court file at the time of mailing. The reason for this was that the press had evidenced a great deal of interest in the case, and the court did not wish its decision to be made public until the final memorandum was prepared, outlining the grounds for the court's decision. Thus, the placing of the letter in the official file was delayed until the final memorandum was released.

When the court requests the attorney for a prevailing party to assist in the preparation of the final memorandum, a conference is arranged with that attorney. At the conference, the court furnishes the assisting attorney with its rough draft and gives that attorney instructions as to how the court desires the final memorandum to be prepared. The work of the attorney in preparing the final draft is largely ministerial, and certainly rises to no higher level than the services performed by a law clerk. The secretarial facilities of the attorney are utilized, thus freeing the court and its staff from such functions. The number of conferences held between the court and the assisting attorney and the number of drafts submitted to the court varies, depending upon the diligence of the assisting attorney in following the court's instructions. The court studies the proposed final memorandum carefully, and any portions unsatisfactory to the court are altered or deleted.

In the case *sub judice,* the court and its staff expended many hours of research prior to deciding the issues in the case in favor of plaintiff. In the course of this research, the court learned that a controlling case on one of the points involved which had been decided by an intermediate appellate court in Louisiana was on appeal to the Supreme Court of Louisiana. This case was *King v. Cancienne,* La., 316 So.2d 366, which was decided by the Supreme Court of Louisiana on June 23, 1975. Following the final determination in the *King* case, *supra,* the court proceeded to decide the issues in the case currently at bar and personally prepared a rough draft memorandum, the major portion of which was written in longhand. (See Appendix 2 * ). As mentioned previously, the court notified the parties of its decision by letter, in which it also requested that the counsel for the prevailing party contact this court to assist in preparation of the final memorandum opinion.

Mr. Speight, counsel for plaintiff, met with the court and was furnished the handwritten rough draft, a copy of the Louisiana Supreme Court's opinion in *King v. Cancienne, supra,* and various other research notes of the court.[1] Mr. Speight was instructed that he was performing services for the court and should not disclose the contents of the memorandum opinion until it had been signed by the court and entered in the file. The court approved the final draft proposed by Mr. Speight only after considerable editing. In fact, the court made a deletion, alteration, or addition on literally every page of the memorandum draft submitted by Mr. Speight.

The court heard oral argument on defendants' Motion for a New Trial and Motion to Reconsider, Alter and Amend Judgment on December 17, 1975. At this hearing, the primary complaint of Mr. Frank, counsel for defendants, appeared to focus on the fact that he was not furnished a copy of the opinion written by the Supreme Court of Louisiana in *King v. Cancienne, supra.* Mr. Frank stated that he had asked Mr. Speight for a copy of the *King* opinion, but that Mr. Speight informed him that he had been instructed by the court not to discuss the contents of the memorandum until it had been signed by the court.

The court notes that on no occasion did Mr. Frank request that this court include him in the conference with Mr. Speight; nor did he ever request this court to furnish him with its research notes or a copy of the *King* opinion. The court feels that such a request, even if granted, would not have been fruitful to counsel. The adversarial nature of the case was terminated. The court had made its decision, and no further argument was desired. The first objection made by defendants' counsel to the procedure utilized by this court in preparing its final memorandum was made in the Motion to Reconsider, Alter and Amend Judgment. The court further notes that the *King v. Cancienne* case was discovered by the basic research technique of "Shepardizing," a procedure which none of the counsel involved in the case apparently chose to employ. The *King* decision was a matter of public record, and was easily accessible to counsel for defendants without the assistance of this court.

As mentioned previously, counsel for defendants states in his Brief in Support of Motion to Reconsider, Alter and Amend Judgment that defendants were prejudiced in that their counsel has been "precluded from knowledge as to the basis of the Court's decision on July 17, 1975." In support of this proposition, counsel for defendants cites *Roberts v. Ross, supra,* and *In re Las Colinas, Inc., supra.* Neither of these cases supports defendants' contention that the court erred in its manner of preparing the final draft of the memorandum.

---

* Deleted from published opinion.

1. The court's work file, including the rough draft memorandum handwritten by the court, and the draft proposed by counsel for plaintiffs which was amended and altered by the court's staff, were filed as Exhibit No. 1 at the hearing on the motions *sub judice.* On appeal, the attorney for the plaintiff will include Exhibit No. 1 in any appendix filed.

In the *Roberts* case, the Third Circuit Court of Appeals held that the district court's findings of fact and conclusions of law were insufficient to indicate the bases of the trial judge's decision, and remanded the cause for appropriate findings of fact and conclusions of law. In *Roberts,* the trial judge followed the practice of announcing his decision in the form of a general verdict, and then directing counsel for the prevailing party to prepare and submit findings of fact, conclusions of law, and a form of judgment. The Court of Appeals strongly criticized this practice on the basis that ". . . counsel who is called upon to articulate and write out the findings and conclusions must do so without any knowledge of the fact findings and reasoning processes through which the judge has actually gone in reaching his decision." In the case at bar, the court itself prepared the rough draft memorandum and instructed counsel for plaintiff in considerable detail with regard to the preparation of the final memorandum opinion. When this memorandum was submitted to the court for approval, it was carefully studied and edited and many changes were made. Under these circumstances, the court cannot agree that counsel for defendant has been precluded from knowledge as to the basis of the court's decision. The grounds for the court's decision in this cause are clearly set forth in the memorandum opinion.

In the case of *In re Las Colinas, Inc., supra,* the First Circuit Court of Appeals was critical of the trial judge's verbatim adoption of the proposed findings of the prevailing party. Nonetheless, it recognized that these findings must stand if supported by evidence. *Id.* at 427 F.2d 1010. Thus, *Colinas* does not support the proposition that this court erred in its method of drafting the final memorandum.

The court considers the following statement in *Schilling v. Schwitzer-Cummins Co.,* 79 U.S.App.D.C. 20, 142 F.2d 82 (1944) to be an appropriate answer to the question raised by counsel for defendants with respect to the court's chosen method of preparing the memorandum:

"Whatever may be the most commendable method of preparing findings—whether by a judge alone, or with the assistance of his court reporter, his law clerk and his secretary, or from a draft submitted by counsel—may well depend upon the case, the judge, and facilities available to him. If inadequate findings result from improper reliance upon drafts prepared by counsel—or from any other cause—it is the result and not the source that is objectionable. It is no more appropriate to tell a trial judge he must refrain from using or requiring the assistance of able counsel, in preparing his findings, than it would be to tell an appellate judge he must write his opinions without the aid of briefs and oral argument. What the law requires in this respect is that the findings as made, shall be those of the trial judge himself. The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence. To the extent that they are, in addition, concisely stated, non-argumentative in form, free from conclusions of law and from the redundancy so frequently found in pleadings, they will be more useful to all concerned." 142 F.2d 83, 84

The court is not unaware that the practice of employing counsel to assist in the preparation of the final memorandum opinion has been criticized. *See, e. g.: In re Las Colinas, Inc.,* 427 F.2d 1005, 1009–1010 (1st Cir. 1970); *Securities and Exchange Commission v. R. A. Holman & Co.,* 366 F.2d 456, 457 (2nd Cir. 1966); *Roberts v. Ross,* 344 F.2d 747, 751 (3rd Cir. 1965); *Chicopee Mfg. Corp. v. Kendall Company,* 288 F.2d 719, 724–725 (4th Cir. 1961); *Keystone Plastics, Inc. v. C & P Plastics, Inc.,* 506 F.2d 960, 963 (5th Cir. 1975); *Fortner Enterprises, Inc. v. U. S. Steel Corp. et al.,* 523 F.2d 961, Footnote 2 (6th Cir. 1975); *FS Service, Inc. v. Custom Farm Services, Inc.,* 471 F.2d 671, 676 (7th Cir. 1972); *Rincon Band of Mission Indians v. County of San Diego,* 495 F.2d 1, 11 (9th Cir. 1974); *Edward B. Marks*

*Music Corp. v. Colorado Mag., Inc.,* 497 F.2d 285, 287 (10th Cir. 1974). *But see: Bradley v. Maryland Casualty Company,* 382 F.2d 415, 423 (8th Cir. 1967); *Schwerman Trucking Co. v. Gartland Steamship Co.,* 496 F.2d 466, 474–475 (7th Cir. 1974); *O'Leary v. Liggett Drug Co.,* 150 F.2d 656, 667 (6th Cir. 1945) *cert. denied,* 326 U.S. 773, 90 L.Ed. 467, 66 S.Ct. 231 (1945). In *O'Leary,* the Sixth Circuit Court of Appeals stated:

> "The fact that proposed findings of fact, prepared and submitted by the successful attorneys, have been adopted by the trial court does not detract from their legal force or effect. When adopted, such findings become the findings of the court, and are entitled to the same respect as if the judge, himself, had drafted them." 150 F.2d 667

With the possible exception of *Chicopee Mfg. Corp. v. Kendall Company, supra,* none of the cases cited above as criticizing the practice holds that it is reversible error *per se* for a court to employ the assistance of counsel in the preparation of its final memorandum opinion. As the Fifth Circuit Court of Appeals observed in *Professional Golfers Ass'n. v. Bankers L. & C. Co.,* 514 F.2d 665, 672 (5th Cir. 1975):

> ". . . the scope of appellate review does not change simply because we disapprove the manner in which the district court arrived at its findings of fact and conclusions of law. We are bound by the clearly erroneous rule in reference to factual determinations."

*See also: Keystone Plastics, Inc. v. C & P Plastics, Inc., supra,* wherein the court said:

> ". . . this court is committed to the proposition that, even though the trial court has ignored this reiterated admonition and has uncritically accepted findings proposed by one of the parties, such findings must be tested by the standard of review mandated by Rule 52, F.R. Civ.P., 28 U.S.C.A." 506 F.2d 963

Similarly, the Sixth Circuit Court of Appeals has stated: "We consider the clearly erroneous standard the proper standard for defining the scope of appellate review of factual findings by the district court."

*Fortner Enterprises v. U. S. Steel et al., supra,* 523 F.2d, Footnote 2, p. 964.

It appears from the above that the courts of appeal generally recognize that there is no legal authority which would permit an appellate court to reverse a district court's decision purely on the basis that it was adopted verbatim from a draft submitted by an attorney.

As indicated above, only the Fourth Circuit has found reversible error in the fact that the court's opinion was prepared by counsel for the prevailing party. *Chicopee Mfg. Corp. v. Kendall Company, supra.* In that case, an elaborate 32-page opinion

> ". . . was prepared by the attorneys of the plaintiff upon the request of the District Judge without notice to the attorneys for the defendant. It was filed by the District Judge without change except for minor immaterial alterations on the first and last pages." 288 F.2d 720

The Fourth Circuit Court of Appeals held in *Chicopee, supra,* that:

> ". . . there is no authority in the federal courts that countenances the preparation of the opinion by the attorney for either side. That practice involves the failure of the trial judge to perform his judicial function and when it occurs without notice to the opposing side, as in this case, it amounts to a denial of due process. In either event, a reversal of the judgment and a remand for further proceedings would be justified." 288 F.2d 724, 725

The case at bar is distinguishable from *Chicopee* in that this court notified counsel for all the parties in writing that Mr. Speight, counsel for plaintiff, would assist in the preparation of the final memorandum opinion. Furthermore, as previously stated, the court prepared and furnished to counsel for plaintiff a rough draft opinion, and later extensively edited his final rendering.

Additionally, insofar as it did not rely on the lack of notice issue, the Fourth Circuit's opinion in *Chicopee* would appear to be out of line with the weight of authority. Three years after the *Chicopee* case was decided,

the Supreme Court of the United States handed down its decision in the case of *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). In the *El Paso* case, the district judge had announced from the bench that judgment would be for appellees and that he would not write an opinion. He instructed counsel for the prevailing party to prepare findings and conclusions and a judgment, and he adopted verbatim the draft proposed by counsel. The Supreme Court criticized the trial judge's verbatim adoption of findings of fact and conclusions of law prepared by counsel, but stated that

". . . [t]hose findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence. *United States v. Crescent Amusement Co.,* 323 U.S. 173, 184–185, 65 S.Ct. 254, 89 L.Ed. 160, 169." 376 U.S. 656, 84 S.Ct. 1047, 12 L.Ed.2d 17

*See also: United States v. Marine Bancorporation,* 418 U.S. 602, 616, 94 S.Ct. 2856, 2867, 41 L.Ed.2d 978, 992 (1974); *Bradley v. Maryland Casualty Company,* 382 F.2d 415, 423 (8th Cir. 1967); *Railex Corporation v. Speed Check Co.,* 457 F.2d 1040, 1042 (5th Cir. 1972); *Volkswagen of America, Inc. v. Jahre,* 472 F.2d 557, 559 (5th Cir. 1973); *George W. B. Bryson & Co., Ltd. v. Norton Lilly & Co., Inc.,* 502 F.2d 1045, 1049 (5th Cir. 1974); *O'Leary v. Liggett Drug Co.,* 150 F.2d 656 (6th Cir. 1945); *Panduit Corporation v. Burndy Corporation,* 517 F.2d 535, 539, Footnote 3 (7th Cir. 1975); *United States v. Alaska Steamship Company,* 491 F.2d 1147, 1151, Footnote 8 (9th Cir. 1974); *Nissho-Iwai Co., Ltd. v. Star Bulk Shipping Co.,* 503 F.2d 596, 597–598 (9th Cir. 1974).

In conclusion, this court is in agreement with the following sentiment expressed by the Fifth Circuit Court of Appeals in *Louis Dreyfus & Cie. v. Panama Canal Company,* 298 F.2d 733, 738 (5th Cir. 1962):

"As an ideal matter it would be desirable for the trial judge to draft his own findings in every case. . . . In the workaday world, however, it may often be necessary for a hard-pressed district court to take assistance from counsel in articulating his decision."

Attorneys, who must likewise cope with the pressures of the "workaday world," are, with few exceptions, keenly aware of the burdens imposed upon district judges by their mounting case loads. It was with a good deal of surprise and indignation, therefore, that this court became aware of defendants' counsel's charge concerning the method by which the final memorandum in this case was prepared. The very reason for seeking the assistance of attorneys in the final, ministerial task of articulating the concepts upon which the court has grounded its decision is to free the court to direct its energies and resources to the other cases awaiting its attention, wherein other attorneys demand consideration of their particular problems.

The crucial role of the court in deciding any case is to bring its independent analysis and reflection to bear on the issues before it and to render a decision which is just, fair, and in accordance with the applicable law. But counsel for defendants would impose on the court the additional requirement that every word in the written opinion issue directly from the pen of the deciding judge. If this standard were indeed adopted, of what use would be per curiam opinions, concurrences in majority or dissenting opinions, or even quoting the language of prior decisions, since each involves the appropriation of another's words to express one's own conclusions?

The absurdity of defendants' counsel's contention is patent. No district court with any appreciation of the demands upon its time would willingly neglect to avail itself of whatever resources might be available in order to more efficiently carry out its official duties.[2]

---

2. This is not to say, of course, that courts should adopt shortcuts which substitute for independent scrutiny of the issues in a case; rather, that once a resolution of those issues has been arrived at, its verbalization, subject always to deliberative re-examination by the court, may properly be delegated to counsel for the successful party.

974

The difficulty which counsel for defendants apparently is unable to overcome is the very simple distinction between the source of the precise words used in the court's memorandum and the authority with which those words are clothed once the judge affixes his signature to the document. That act constitutes an adoption of every syllable of the memorandum as the court's own position just as surely as if the judge had personally penned them in longhand.

It is almost too obvious to state that this court assumes full responsibility for the content of any memorandum or order which it signs, and it is a manifest insult to its integrity and intelligence to have its official decision challenged on the transparent technicality conjured up by defendants' counsel.

█ The means by which a final memorandum is prepared is a matter properly within the sound discretion of the trial judge, and this court will continue to prepare its official pronouncements in whatever manner it deems appropriate to the situation.

An appropriate order will be entered.

## APPENDIX I

## United States District Court
Middle District of Tennessee
Nashville 37203

July 17, 1975

Chambers of
L. Clure Morton
District Judge

John S. Clark, Esq.
Attorney at Law
745 Fifth Avenue
New York, New York 10022

William F. Carpenter, Jr., Esq.
Richard D. Speight, Esq.
Attorneys at Law
600 American Trust Building
Nashville, Tennessee 37201

L. Peter Parcher, Esq.
Attorney at Law
1370 Avenue of the Americas
New York, New York 10019

Richard Frank, Jr., Esq.
Attorney at Law
Third National Bank Building
Nashville, Tennessee 37219

Robert B. Stewart, Esq.
Attorney at Law
P. O. Box 429
Montgomery, Alabama 36101

Re: Hill & Range Songs, Inc. v. Fred Rose Music, Inc., Civil No. 6785

Gentlemen:

I have decided all the issues involved in this matter in favor of Hill & Range Songs, Inc.

I request that Mr. Richard Speight contact the court for assistance in the preparation of the final memorandum.

Very truly yours,
L. Clure Morton
L. Clure Morton